# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MICHIGAN, and THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN, <br>     Plaintiffs, <br><br> v. <br><br> THE DOW CHEMICAL COMPANY, <br>     Defendant. | Case No: 1:19-cv-13292 |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States, acting at the request and on behalf of the U.S. Department of the Interior ("DOI") through the U.S. Fish and Wildlife Service and the Bureau of Indian Affairs; the State of Michigan (the "State"), through State natural resource trustees, the Michigan Department of Environment, Great Lakes, and Energy ("EGLE")(formerly known as the Michigan Department of Environmental Quality or "MDEQ"), the Michigan Department of Natural Resources ("MDNR"), and the Michigan Attorney General; and the Saginaw Chippewa Indian Tribe of Michigan ("Tribe") under its Tribal Council, through the undersigned attorneys, file this complaint and allege as follows:

NATURE OF THE ACTION

1.     This is a civil action brought by the United States, the State, and the Tribe (collectively, the "Plaintiffs") against Defendant The Dow Chemical Company ("Dow") pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a).  The State also brings this action pursuant to Sections 3115(2) and 20126a of the Michigan Natural Resources and Environmental Protection Act ("NREPA"), MCL 324.3115(2) and 324.20126a.  The Plaintiffs seek to recover damages for injury to, loss of, or destruction of natural resources resulting from releases of hazardous substances from facilities at and near Dow's Michigan Operations, Midland Plant, located at 1000 East Main Street, Midland, Michigan ("Midland Facility").  The Plaintiffs also seek a declaratory judgment that Dow is liable for any further damages that may be assessed for injury to, loss of, or destruction of natural resources resulting from such releases of hazardous substances, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and MCL 324.201226a.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. §§ 9613(b), and 28 U.S.C. §§ 1331, 1345, and 1367(a).

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c) because the claims arose and the releases of hazardous substances occurred in this district.

## BACKGROUND

4. Dow's Midland Facility is located on approximately 1,900 acres along both sides of the Tittabawassee River in Midland, Michigan. The Midland Facility is Dow's headquarters and has historically been Dow's primary chemical research and manufacturing facility since the company's founding in 1890. One of the chemical production processes at Dow's Midland Facility was electrolysis of brine using carbon electrodes to produce bleach and other chlorine-containing products, including chlorine gases, caustic soda, liquid chlorine, chlorinated phenols, chlorobenzenes, agricultural products, synthetic rubber, and Styrofoam$^{TM}$. This electrolytic process generated significant amounts of the polychlorinated dibenzo-*p*-dioxins ("PCDDs" or "dioxins") and polychlorinated dibenzofurans ("PCDFs" or "furans"), along with other hazardous substances, that were released into water, sediments, and floodplain soils along the Tittabawassee River and then moved

downstream into the Saginaw River and Saginaw Bay of Lake Huron. In addition, hazardous substances were released into the air from incinerators Dow operated at its Midland Facility and settled on surrounding lands and waters.

5. Hazardous substances, including PCDDs and PCDFs, released from the Midland Facility have resulted in, and continue to result in, injury to, destruction of, or loss of natural resources in a geographic area referred to as the Tittabawassee River System Assessment Area ("TRSAA"), which consists of portions of the Tittabawassee River, the Saginaw River, and floodplain areas adjacent to these rivers, portions of the Saginaw Bay, as well as certain areas in or near Midland, Michigan that were affected by aerial deposition of hazardous substances emitted from incinerators at the Midland Facility. Among other things PCDDs and PCDFs released from the Midland Facility have caused adverse health and reproductive effects in fish, birds, mammals, and invertebrates in the TRSAA. PCDDs and PCDFs have very low solubility in water and bioaccumulate in organisms such as fish, birds, and mammals. PCDDs and PCDFs are toxic at extremely low concentrations, and in humans can lead to skin lesions; altered liver function; impairment of the immune system, nervous system, endocrine system, and reproductive functions; and death. Since at least 1982, human health-based consumption advisories have been established for fish and wild game in various parts of the TRSAA, based on the presence of dioxins or furans in edible portions

4

of fish and game, and such advisories remain in effect at this time.  In addition, soil-contact advisories have been established because of the presence of dioxins and furans in various areas, including several parks in the TRSAA, and such advisories remain in effect at this time.

<u>Natural Resource Damage Assessment and Restoration Activities</u>

6.     CERCLA § 107, 42 U.S.C. § 9607, imposes liability on certain classes of potentially responsible parties ("PRPs"), including current owners and operators of a facility from which there has been a release of a hazardous substance, parties that owned or operated such a facility at the time of disposal of a hazardous substance, and parties that arranged for disposal or treatment of a hazardous substance at such a facility owned by another party or entity.

7.     Under CERCLA § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), PRPs are liable for damages for any injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances, including the reasonable costs of assessing such injury.  Pursuant to CERCLA § 107(f), 42 U.S.C. § 9607(f), duly-designated Federal, State, and Tribal natural resource trustees are authorized to assess damages for injury to, destruction of, or loss of natural resources ("natural resource damages" or "NRD"), and to develop plans to restore, replace, or acquire the equivalent of the injured, destroyed or lost resources.

8. Under CERCLA § 101(16), 42 U.S.C. § 9601(16), the term "natural resources" includes "land, fish, wildlife, biota, air, water . . . and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States [or] any State or local government … [or] any Indian tribe."

9. Natural resources in the TRSAA have been injured, and natural resources will continue to be injured, as a result of releases of hazardous substances – especially PCDDs and PCDFs – at and from the Midland Facility into the environment.

10. DOI has been designated as a natural resource trustee for federal trust resources in the TRSAA pursuant to 42 U.S.C. § 9607(f)(2)(A), 40 C.F.R.§ 300.600, and Exec. Ord. No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987). DOI acts on behalf of the public as a trustee for natural resources, including threatened or endangered species, migratory birds, other fish and aquatic life, and their supporting ecosystems, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States. *See*, *e.g.*, 40 C.F.R. § 300.600.

11. EGLE, MDNR, and the Michigan Attorney General have been designated as State natural resource trustees for state trust resources in Michigan pursuant to 42 U.S.C. § 9607(f)(2)(B) and 40 C.F.R. § 300.605. EGLE, MDNR,

and the Michigan Attorney General act on behalf of the public for natural resources, including their supporting ecosystems, within the boundary of the State or belonging to, managed by, or appertaining to such State. 40 C.F.R. § 300.605.

12. The Tribe is a natural resource trustee for tribal trust resources in the TRSAA pursuant to 42 U.S.C. § 9607(f).

13. Federal, state, and tribal trusteeship over natural resources may overlap. The National Contingency Plan directs that, where there are multiple trustees, the trustees should coordinate and cooperate in carrying out their responsibilities. 40 C.F.R. § 300.615(a).

14. NRD includes the costs of actions to restore, replace, or acquire the equivalent of the injured natural resources and the reasonable costs of assessing the injury and the associated damages. NRD may also include compensation for interim losses to the public attributable to natural resource injuries from the onset of the injury through the restoration or recovery of the natural resources to an uninjured state, adjusted for any mitigation of those injuries by response actions or early restoration actions, and any increase in injuries that may have occurred as a result of response actions.

15. As required by CERCLA § 301(c), 42 U.S.C. § 9651(c), DOI has promulgated regulations respecting the assessment of NRD and associated restoration activities. Those regulations are codified at 43 C.F.R. Part 11.

16. As expressly provided by CERCLA § 107(f)(2)(C), 42 U.S.C. § 9607(f)(2)(C), any determination or assessment of damages made by a Federal or State trustee in accordance with DOI's NRD assessment regulations shall have the force and effect of a rebuttable presumption on behalf of the trustee in any judicial proceeding to recover such damages under CERCLA.

17. DOI, the State, and the Tribe have performed a variety of NRD assessment activities concerning the TRSAA in accordance with DOI's NRD assessment regulations. The assessment activities have included preparation of a preassessment screen; issuance of an assessment plan; development of a draft injury determination, injury quantification, and damage determination with restoration scaling; and development of a joint Draft Restoration Plan / Environmental Assessment that includes descriptions of the injury determination, injury quantification, and damage determination work conducted.

18. The amounts recoverable in an action for NRD under CERCLA Section 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), include statutory prejudgment interest on the damages.

## GENERAL ALLEGATIONS AND ALLEGATIONS RELATING TO THE DEFENDANT

19. Defendant Dow is a Delaware corporation, with its principal place of business in Midland, Michigan.

20.     Dow is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and MCL 324.301(h).

21.     The Midland Facility referenced in Paragraphs 1 and 4, as well as other paragraphs herein, is a "facility," within the meaning of CERCLA §§ 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), and MCL 324.20101(s).

22.     PCDDs and PDCFs are "hazardous substances," within the meaning of CERCLA §§ 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a), and MCL 324.20101(x).

23.     Defendant Dow has owned and/or operated chemical production facilities in Midland, Michigan, within areas that are part of the Midland Facility, since 1890.

24.     Dow produced various products at its Midland Facility, including through its use of a brine electrolysis process that used carbon electrodes that generated waste that included significant amounts of PCDDs and PCDFs at the Midland Facility.

25.     Dow disposed of spent carbon electrodes from the Midland Facility at various locations, including locations near the banks of the Tittabawassee River and its tributaries. These spent carbon electrodes contained PCDDs and PCDFs. In addition, Dow discharged wastewater containing PCDDs and PCDFs into the environment from the Midland Facility. Dow also operated incinerators at the

Midland Facility that were used to dispose of waste materials, including waste materials that contained PCDDs and PCDFs, and in the process Dow emitted PCDDs and PCDFs into the air.  As a result of these and other activities, Dow released hazardous substances, including PDCCs and PCDFs, from the Midland Facility into the environment, including soil, groundwater, surface water and air, and some of those hazardous substances were deposited onto land and water in or near Midland.  Such releases occurred at times when Dow owned and/or operated the Midland Facility.

26. As the current owner and operator of the Midland Facility, and a party that owned and operated the Midland Facility at the time hazardous substances were disposed of there, Dow is liable to Plaintiffs in this action under CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), and MCL 324.20126(l).

FIRST CLAIM FOR RELIEF

(NRD claims by the United States, the State, and the Tribe under CERCLA Sections 107 and 113(g)(2), 42 U.S.C. §§ 9607 and 9613(g)(2))

27. Paragraphs 1–26 are re-alleged and incorporated herein by reference.

28. Releases of PCDDs and PCDFs into the environment at and from the Midland Facility have resulted in injury to, destruction of, or loss of natural resources under Federal, State, and Tribal trusteeship.  Federal, State, and Tribal trusteeships of injured natural resources at the TRSAA overlap.

29. As a result of releases of hazardous substances at and from the Midland Facility that resulted in injury to, destruction of, or loss of natural resources in the TRSAA, Plaintiffs undertook activities to assess such injury, destruction or loss and the associated damages, and Plaintiffs have incurred reasonable costs of assessing such injury, destruction or loss and damages. Although Dow has previously reimbursed some of the natural resource damage assessment costs incurred by each of the Trustees, each of the Trustees has incurred reasonable natural resource damage assessment costs that have not been reimbursed by Dow to date.

30. Dow is jointly and severally liable to the United States, the State, and the Tribe for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such damages and the injury, destruction, or loss ("assessment costs"), resulting from releases of hazardous substances at and from the Midland Facility, pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C).

31. Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that Dow is liable for any further damages, including assessment costs, that may occur for injury to, loss of, or destruction of natural resources, resulting from the releases of hazardous substances described above in this Complaint.

## SECOND CLAIM FOR RELIEF
(State claims under NREPA)

32.  Paragraphs 1–26 are re-alleged and incorporated herein by reference.

33.  The releases of PCDDs and PCDFs into the environment at and from the Midland Facility constitute a "release" and "disposal" of a "hazardous substance" as those terms are defined in Section 20101(pp), 20101(m), and 20101(x) of the NREPA, respectively (MCL 324.20101(pp), 324.20101(m), 324.20101(x)).

34.  The releases of PCDDs and PCDFs at and from the Midland Facility resulted in injury to, destruction of, or loss of natural resources belonging to, managed by, controlled by, held in trust by, and/or appertaining to the State.

35.  An owner or operator of a facility who is responsible for an activity causing a release or threat of release, or who is the owner or operator of a facility at the time of disposal of a hazardous substance, is liable under Part 201 of the NREPA.  MCL 324.20126(1).

36.  As the owner and operator of the Midland Facility, Dow is jointly and severally liable to the State for damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or disposal of hazardous substances, including the reasonable costs of assessing such injury, loss, or destruction.  MCL 324.20126a(1)(c).

37. Liability for natural resource damages under Section 20126a(1)(c) "shall be to the state for natural resources belonging to, managed by, controlled by, appertaining to, or held in trust by the state or a local unit of government." MCL 324.20126a(4).

38. The State of Michigan is authorized to bring a civil claim seeking recovery of damages for the full value of injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release. MCL 324.20137(1)(c).

39. The State's claims for natural resource damages under Michigan law are brought in conjunction with the claims of the Federal and Tribal trustees, and do not seek duplicative recovery of damages for the same release and natural resource. MCL 324.20126(a)(4).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America, the State of Michigan, and the Saginaw Chippewa Indian Tribe of Michigan, respectfully request that this Court:

1. Enter a judgment in favor of the Plaintiffs and against Dow for natural resource damages, including assessment costs, as well as prejudgment interest;

2. Enter a declaratory judgment in favor of the Plaintiffs and against Dow for any further natural resource damages, including reasonable assessment costs, that may occur as a result of hazardous substance releases at or from the Midland Facility;

3. Award the United States, the State, and the Tribe their costs of this action; and

4. Grant such other and further relief as the Court deems just and proper.

Signature Page for Complaint in *United States, the State of Michigan, and the Saginaw Chippewa Indian Tribe of Michigan v. The Dow Chemical Co.* (E.D. Mich.)

For the United States of America

_____
JONATHAN D. BRIGHTBILL
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


*s/ Steven J. Willey*
_____
STEVEN J. WILLEY (Ohio 0025361)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
Steven.Willey@usdoj.gov
202-514-2807

Signature Page for Complaint in *United States, the State of Michigan, and the Saginaw Chippewa Indian Tribe of Michigan v. The Dow Chemical Co.* (E.D. Mich.)

                              For the United States of America (continued)

                              MATTHEW SCHNEIDER
United States Attorney
Eastern District of Michigan

*s/ with consent of Lynn Dodge*
LYNN DODGE (P38136)
Assistant United States Attorney
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

OF COUNSEL:
Kimberly Gilmore
Staff Attorney (PA 43956)
U.S. Department of the Interior
Office of the Solicitor
Three Parkway Center, Rm 385
Pittsburgh, PA 15220

16

Signature Page for Complaint in *United States, the State of Michigan, and the Saginaw Chippewa Indian Tribe of Michigan v. The Dow Chemical Co.* (E.D. Mich.)

        For the State of Michigan

        DANA NESSEL
        Attorney General of Michigan

        *s/ with consent of Polly A. Synk*
        POLLY A. SYNK (P63473)
        Assistant Attorney General
        Michigan Department of Attorney General
        Environment, Natural Resources,
        and Agriculture Division
        6th Floor, G. Mennen Williams Building
        525 West Ottawa Street
        Lansing, MI 48933
        517-335-7664
        synkp@michigan.gov

        DANIEL EICHINGER, Director

        Michigan Department of Natural Resources
        Constitution Hall, 525 West Allegan Street
        P.O. Box 30028
        Lansing, MI 48909-7528
        517-284-6367

        LEISL EICHLER CLARK, Director

        Michigan Department of Environment,
        Great Lakes, and Energy
        P.O. Box 30473
        Lansing, MI 48909-7973
        517-284-6700

Signature Page for Complaint in *United States, the State of Michigan, and the Saginaw Chippewa Indian Tribe of Michigan v. The Dow Chemical Co.* (E.D. Mich.)

For the Saginaw Chippewa Indian Tribe of Michigan

*s/ with consent of Sean J. Reed*
SEAN J. REED (P62026)
General Counsel of Soaring Eagle Gaming and Intergovernmental Affairs
Saginaw Chippewa Indian Tribe of Michigan
7070 E. Broadway
Mt. Pleasant, MI 48858
989-775-4032
sreed@sagchip.org